UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORRI OKPARA,<br><br>   *Plaintiff*,<br><br> v.<br><br>DISTRICT OF COLUMBIA; KAMIL REMBISZEWSKI; ROBERT L. HOWARD,<br><br>   *Defendants*. | Civil Action No. 14-535 (RDM) |

**MEMORANDUM OPINION**

In 2013, Lorri Okpara was arrested at her home and detained at a District of Columbia police station for 24 hours. While in police custody, she was twice taken to an area hospital to be treated for diabetes. According to Okpara, during the second of these two trips, the officers who brought her to the hospital mistreated her, shoving her into the back of the police van and over-tightening her handcuffs. After being released, Okpara was diagnosed with a permanent radial nerve injury in her left wrist. She subsequently brought this suit against the District and the officers who arrested her, alleging negligence, assault and battery, and violations of her civil rights. The case is now before the Court on the District's motion for partial summary judgment, Dkt. 27. For the following reasons, the Court will **GRANT** the District's motion in part and **DENY** it in part.

**I. BACKGROUND**

For the purpose of evaluating the District's motion for partial summary judgment, the following facts are construed in the light most favorable to Okpara. *See Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006).

Lorri Okpara is a 53-year-old resident of the District of Columbia. *See* Compl. ¶ 4; Dkt. 28-1 at 2 (Pl.'s Opp., Ex. 2). On July 28, 2013, Okpara was arrested at her home for assaulting her husband. Compl. ¶ 7. She was taken to the jail at D.C. police headquarters, where she was detained overnight. *Id.* While detained, Okpara—who is diabetic—became hyperglycemic, and was twice taken to Washington Hospital Center and provided with insulin. Dkt. 28 at 1–2 (Pl.'s Statement of Material Facts ("SMF") ¶¶ 3–5). The police officers who accompanied Okpara to the hospital the second time were Officers Kamil Rembiszewski and Robert Howard. *See id.* at 2 (Pl.'s SMF ¶ 6). This lawsuit arises out of events occurring during the second trip to and from the hospital.

According to Okpara, when Rembiszewksi and Howard put her in a police vehicle to be taken to the hospital, she told them that she had a spinal condition that would make it painful to be handcuffed behind her back. Dkt. 28-1 at 8 (Pl.'s Opp., Ex. 3, at 5). Howard allegedly said, "That's not my problem," and handcuffed Okpara behind her back. *Id.* Okpara states that he applied the handcuffs extremely tightly and, when she asked him to loosen them, he ignored her. *Id.*; *see also* Dkt. 27-1 at 6 (Defs.' Motion for Partial Summary Judgment ("MPSJ"), Ex. 1, at 127:20) ("Okpara Depo."). According to Okpara, the handcuffs caused stinging pain in her left hand. Dkt. 27-1 at 7 (Okpara Depo. 134:15–16). She repeatedly asked the officers to loosen the handcuffs, but they refused to do so. *Id.* (Okpara Depo. 134–35).

After Okpara was administered insulin, Officers Rembiszewski and Howard took her back to the police station. Because her blood sugar was low, Okpara had trouble getting back into the police vehicle, and Howard allegedly said: "You better get up in that truck, because if I have to help you get up in there . . . ." *Id.* at 10 (Okpara Depo. 147:5–6). When Okpara could not climb into the van unassisted, Howard purportedly "took [Okpara] by [her] pants leg and

[her] arm and . . . threw [her] up in there." *Id.* (Okpara Depo. 147:12–13); *see also id.* (Okpara Depo. 148:20–22) ("He just took my pants leg and took my arm while he was behind me and threw me up on the seat."). Okpara landed on the floor of the van. *Id.* (Okpara Depo. 149:19). She testified in her deposition that she was visibly distressed by her mistreatment. *Id.* (Okpara Depo. 149:1). Howard agrees that Okpara was "upset." Dkt. 27-3 at 4 (Defs.' MPSJ, Ex. 3, at 15:20) ("Howard Depo.").

Okpara was released after 24 hours without being charged. Dkt. 28 at 1 (Pl.'s SMF ¶ 2). The next day, she went to Providence Hospital in D.C., complaining of pain and swelling in her left wrist and numbness in her fingers. *Id.* at 2 (Pl.'s SMF ¶ 10); *see also* Dkt. 28-1 at 16–17 (Pl.'s Opp., Ex. 4, at 2) (doctor's report noting "constant" pain and inability to touch left thumb to fingers). A month later, she saw a neurologist, Dr. Pedro Macedo, who diagnosed her with a radial nerve injury in her left hand as a result of the handcuffing. Dkt. 28-1 at 32 (Pl.'s Opp, Ex. 5). A second physician, Dr. Michael Batipps, confirmed the diagnosis in November. *See id.* at 39 (Pl.'s Opp, Ex. 6) (doctor's report noting that Okpara has a "classical handcuff neuropathy involving the left . . . superficial radial nerve sensory branch"). On subsequent visits in March and September 2014, Dr. Batipps observed the same symptoms. *See id.* at 43, 45. In September, Dr. Batipps wrote that Okpara had "reached the maximum medical improvement" and opined that her wrist injury was likely a "permanent nerve injury." *Id.* at 45.

In March 2014, Okpara brought this suit in D.C. Superior Court. *See* Dkt. 1-1 (Compl.). Her complaint asserted four counts against the District, Rembiszewski, and Howard, all arising out of injuries she sustained in traveling between the police station and the hospital. She alleged one count of negligence against the District of Columbia arising out of the officers' lack of due care in tightening her handcuffs, *id.* ¶¶ 9–11 (Count I); one count of assault and battery against

3

the District arising out of the officers' actions in throwing her into the police van, *id.* ¶¶ 12–15 (Count II); one count of assault and battery against the District arising out of the officers' use of force with the handcuffs, *id.* ¶¶ 16–19 (Count III); and one count against the officers, under 42 U.S.C. § 1983, for violating her civil rights in using excessive force, *id.* ¶¶ 20–23 (Count IV). The District removed the case to this Court on March 31, 2014. Dkt. 1.

The case is now before the Court on the District's motion for partial summary judgment on Counts I and II. Dkt. 27.

## II.  LEGAL STANDARD

Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Pepco*, 447

F.3d 843, 850 (D.C. Cir. 2006). The non-movant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If his evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

### III.  DISCUSSION

The District moves for summary judgment only with respect to two of Okpara's four claims: Count I, which alleges negligence against the District of Columbia, and Count II, which alleges assault and battery against the District of Columbia arising out of the officers' use of force in shoving Okpara into the police van. *See* Dkt. 27 at 5–8; Compl. ¶¶ 9–15. Both counts are directed at the District, rather than the individual officers. *See* Compl. ¶¶ 9–15. Unlike a municipality sued under 42 U.S.C. § 1983, however, *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691–92 (1978), the District "is vicariously liable for the intentional and negligent [torts] of its officers acting within the scope of their employment," *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007). For present purposes, the District does not dispute that the negligence or the intentional misconduct of the officers, if any, may be attributed to it on a theory of vicarious liability. With this in mind, the Court will consider each count in turn.

A.      **Count I (Negligence)**

In Count I, Okpara alleges that D.C. police officers "acted in a grossly negligent manner" by "over-tightening [her] handcuffs and refusing to loosen them." *See* Compl. ¶ 10. Under D.C. law, a plaintiff in a negligence action must establish "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Evans-Reid*, 930 A.2d at 937 n.6; *see also Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 29 (D.D.C. 2011). Although "no expert testimony is needed if the subject matter is within the realm of common knowledge and everyday experience," *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001) (internal quotation marks omitted), it is well established in D.C.—and Okpara does not dispute—that expert testimony is required in a negligence case stemming from the misapplication of handcuffs, *Tillman v. WMATA*, 695 A.2d 94, 97 (D.C. 1997); *Richardson v. Korson*, 905 F. Supp. 2d 193, 197 (D.D.C. 2012).

The District argues that summary judgment is appropriate on Okpara's negligence claim because she has not "identified any specific standard of care" violated by either Rembiszewski or Howard. Dkt. 27 at 5–7. Under D.C. law, expert testimony

> is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances. Nor is it enough for the expert simply to declare that the [defendant] violated the national standard of care. Rather, the expert must clearly articulate *and reference* a standard of care by which the defendant's actions can be measured. Thus the expert must clearly relate the standard of care to the practices in fact generally followed by other comparable . . . facilities or to some standard nationally recognized by such units.

*Briggs v. WMATA*, 481 F.3d 839, 846 (D.C. Cir. 2007) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)) (alterations in *Briggs*); *see also Phillips v. District of Columbia*,

714 A.2d 773 (D.C. 1998). The District argues that the testimony of Okpara's expert on police practices does not meet this standard. The Court disagrees.

Okpara has submitted an expert report prepared by Robert Klotz, a former police officer who has frequently testified on use-of-force issues. *See* Dkt. 28-1 at 59–61 (Pl.'s Opp, Ex. 8) ("Klotz Report"); *see also id.* at 51–58 (Pl.'s Opp., Ex. 7) ("Klotz Resume"), 62–68 (Pl.'s Opp, Ex. 8) ("Klotz Depo."). In his report, Klotz states that the Commission on Accreditation of Law Enforcement Agencies ("CALEA") "has established . . . national standards for police activities," *id.* at 61 (Klotz Report at 2); that one specific CALEA rule establishes national standards for "prisoners and restraints," *id.*; that the Metropolitan Police Department had adopted standards that complied with these national standards, *id.*; and that, if Rembiszewski and Howard acted in the way that Okpara claimed they did, their actions would have "violate[d] both national and local police standards," *id.* Standing alone, it is not clear that this report would suffice. Klotz does identify the standard-setting organization, and he does opine that, if Okpara's allegations are accepted as true, the officers failed to comply with that standard. But he does not articulate what the actual standard is or attach copies of the standard to his report.

The District, however, had ample opportunity to explore these kinds of details at Klotz's deposition, where Klotz attested to his opinion. He brought to his deposition not only the portion of the CALEA standards he described in his report but also a portion of a book on the use of force, the relevant provision of the Metropolitan Police Department's general orders, and a report on the effects of handcuffing. *See* Dkt. 28-1 at 64–65 (Klotz Depo. 10–13, 86–89). Klotz also explained that "training material" used by the Metropolitan Police Department at the relevant time instructed officers to use the tips of their index fingers to check "the top, bottom, and side" of the handcuff to ensure there was sufficient room. *Id.* at 65 (Klotz Depo. 86:5–17). He further

7

testified that "all the training that [he] [has] seen done by other departments tell them to do [this same] circumference type check," including "handcuffing orders from several of the counties in Maryland, Virginia," and "on the West Coast." *Id.* (Klotz Depo. 87:17–88:11). He stated that "any reasonable officer" would have followed such a protocol, and that, if Okpara's testimony was believed, that "circumference type of check . . . doesn't appear to have been done in this case." *Id.* (Klotz Depo. 87:7–21); *see also* Dkt. 30 at 17 (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 20).[1] It is true that Klotz did not state the basis for his opinion as clearly as he might. But, taken together, his report and the deposition are sufficient to show that he has "articulate[d] and reference[d] a standard of care by which the defendant[s'] actions can be measured." *Briggs*, 481 F.3d at 846 (emphasis omitted).

A 2011 opinion from this court, *Dormu*, 795 F. Supp. 2d 7, is instructive. In *Dormu*, an African-American resident of the District sued the city and several police officers for damages arising out of a false arrest. *Id.* at 15. Dormu, like Okpara, brought a negligence claim against the city for its officers' failure to follow the national standard of care in handcuffing and, as here, relied on Klotz's testimony to establish that standard. *Id.* at 28. Judge Kennedy, in determining whether Dormu had established a standard of care, distinguished between Klotz's first report—which relied only on a "training bulletin on the use of handcuffs"—and his second report, which relied on an "authoritative text" and a Department of Justice-approved lesson plan, which he also

---

[1] Plaintiff also asks that the Court consider an excerpt from a book, John G. Peters Jr., *Tactical Handcuffing For Chain- and Hinged-Style Handcuffs* (1988), which endorses the circumference test as well. *See* Dkt. 28-1 at 77–79 (Pl.'s Opp., Ex. 12). The Court declines to do so, however, because the excerpt is hearsay, the author of the book has not been offered or qualified to testify as an expert, and there is no evidence that Klotz relied on the excerpt in forming his expert opinion. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007).

found authoritative. *Id.* at 29. Judge Kennedy concluded that while the first report was likely too conclusory to establish a national standard of care, his second report "sufficiently 'articulate[d] and reference[d] a standard of care.'" *Id.* at 29 (quoting *Clark*, 708 A.2d at 635). The same conclusion applies to Klotz's report and subsequent deposition testimony in this case.

The District advances one additional argument as to why summary judgment is warranted on Count I, arguing that Okpara cannot simultaneously assert claims for negligence and assault and battery based on the same incident. Dkt. 30 at 1–2. But the District advances this argument for the first time in its reply brief, and it is well established in this circuit that the Court need not "address arguments raised for the first time in a party's reply." *Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008); *see also Rollins Envtl. Servs. v. EPA*, 937 F.2d 649, 652 n. 2 (D.C. Cir. 1991). Were the Court to consider the District's argument, moreover, it would fail on the merits, for the reasons articulated by Judge Kennedy in *Dormu*. *See* 795 F. Supp. 2d at 30–31. Under D.C. law, a plaintiff may simultaneously assert claims for negligence and assault and battery where the negligence claim is (1) "distinctly pled"; (2) "based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself"; and (3) based on "a distinct standard of care." *District of Columbia v. Chinn*, 839 A.2d 701, 711 (D.C. 2003). Okpara's negligence claim meets these requirements: It is pled in its own count, Compl. ¶¶ 9–11; it can be understood as separate from her assault and battery claim, *see Dormu*, 795 F. Supp. 2d at 30 (distinguishing between a scenario in which officers "intentionally applied the handcuffs tightly" and one in which they "recklessly believed that [they] had properly applied the handcuffs"); and it is based not on the "general excessive force standard" but on the standard identified by Klotz in his report and deposition, *id.* at 31.

In short, the District has raised no material barrier to Okpara's negligence claim, and the Court will **DENY** the District's motion for summary judgment on Count I.

**B.      Count II (Assault and Battery)**

In Count II, Okpara alleges that the officers assaulted and battered her "by throwing [her] into the transport vehicle." Compl. ¶ 13. Under District of Columbia law, "[a] police officer has a qualified privilege to use reasonable force . . . , provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'" *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980)). "This inquiry is done 'from the perspective of a reasonable officer on the scene,' with allowance for the officer's need to make quick decisions under potentially dangerous circumstances." *Dormu*, 795 F. Supp. 2d at 28 (quoting *Etheredge*, 635 A.2d at 916). "This standard is similar to the excessive force standard applied in the Section 1983 context." *Id.* (quoting *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998)). The D.C. Circuit has stated that, when evaluating a defendant's motion for summary judgment on an excessive force claim, the motion

> is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions.

*DeGraff v. District of Columbia*, 120 F.3d 298, 302 (D.C. Cir. 1997); *see also Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 47–48 (D.D.C. 2014).

The Court agrees with the District that no reasonable jury could reach that conclusion with respect to Count II. Taken in the light most favorable to Okpara, the evidence indicates that Howard placed his hands on her arm and pant leg and "threw [her] up in there"—that is, into the van. *See* Dkt. 27-1 at 10 (Okpara Depo. 147:12–13). A reasonable person could certainly be

angry and upset at this rough treatment, as the record reflects that Okpara was. *See id.* (Okpara Depo. 149:1). And it is true that, unlike in many excessive force cases, the officers were not using force while effecting an arrest. *See Egudu*, 72 F. Supp. 3d at 49. Nonetheless, the degree of force employed—even accepting Okpara's version of the events—was not enough to permit a jury to conclude that "no reasonable officer could have believed in the lawfulness of his actions." *DeGraff*, 120 F.3d at 302. It is well short of the degree of force "previously found excessive in this Circuit," *Egudu*, 72 F. Supp. 3d at 49; *see, e.g.*, *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012) (beating a suspect to the ground with a baton); *Johnson v. District of Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008) (kicking a prone man in the groin), even accounting for the fact that the officers were not effecting an arrest. Under Okpara's version of the incident, she was having difficulty getting into the van because her sugar level had dropped and she was "feeling weak." Dkt. 27-1 at 10 (Okpara Depo. 147:2–13). When she, as a result, failed to follow Officer Howard's admonition that she "better get up in the" van, he took her by the leg of her pants and arm and "helped . . . thr[o]w [her] up" into the van. *Id.* Although not an exemplar of care, such behavior is not the kind of conduct that no reasonable officer could believe was lawful.

Accordingly, the Court will **GRANT** the District's motion for summary judgment on Count II.

## CONCLUSION

For these reasons, the Court will **GRANT** the District's motion for summary judgment with respect to Count II of Okpara's complaint, but will **DENY** it with respect to Count I of the complaint.  A separate Order will issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: March 24, 2016